JOHN ITALIANI, Appellant, v. HIGBEE COAL MINING COMPANY.—53 S. W. (2d) 1050.

Division One, October 22, 1932.

Jerry M. Jeffries and Redick O'Bryan for appellant.

*Hunter & Chamier* for respondents.

STURGIS, C.—The purpose of this suit is to have the court take an accounting of the amount of royalties collected by defendant from

coal mined on property known as Mine No. 11, and to decree a conveyance of such mine by the defendant Higbee Coal Mining Company to the plaintiff. The personal defendants are the officers and owners of the capital stock of the Higbee Coal Mining Company. Mine No. 11 consists of the fee title to some seventy acres of land, together with the coal underlying a large body of other land adjacent thereto with the right to mine and remove the coal, and the structures and appliances used in connection with mining. The property is located near Higbee in Randolph County. Plaintiff contends that he has paid the full purchase price of this mine and is entitled to a conveyance of same to him subject only to a lease of same to the defendant Moniteau Coal Company, which is in possession of and operating the mine and from whom the defendant Higbee Coal Mining Company has been collecting the royalties paid on the coal as mined. The controversy is between plaintiff and the Higbee Coal Mining Company, and the Moniteau Coal Company is only interested as lessee, and its rights are conceded. The court tried the case and refused to grant plaintiff any relief; hence this appeal. Most of the facts are without dispute.

The Higbee Coal Mining Company, called herein the Higbee Company, had owned and operated this Mine No. 11. In March, 1925, it sold and conveyed same to plaintiff, including a large amount of mining appliances and personal property used in connection with the mining operations. The plaintiff then went into full possession and operated the mine for several months. During that time the Higbee Company was not interested in the mine or its operation further than it held plaintiff's notes secured by a deed of trust on the mine and mining property used in connection therewith, given in payment of the purchase price.

In August, 1925, the situation was this: Plaintiff had been operating the mine as owner since his purchase of same in March of that year. He had kept up his monthly payments of one note for $1400 due each month in addition to his cash payment of $100, making a total of $5700 paid to defendant on the purchase price of this mine. The total purchase price was $25,000 and there was yet due to defendant $19,300 represented by secured notes held by defendant Higbee Company. The plaintiff was having difficulty in selling the coal mined as his contract to supply the Missouri, Kansas & Texas Railroad Company had expired and the railroad was wanting cheaper coal. This made it difficult for plaintiff to meet the monthly payments of $1400 each due defendant Higbee Company. A foreclosure of the deed of trust on the mine and a possible shut down of the same was threatened. The defendant Higbee Company, however, was not desirous of doing this and preferred making some sacrifice in the amount due it rather than to have to take back the mine by foreclosure. The miners

employed in operating the mine were apprehensive that the mine might close down, as indeed it did do temporarily, and leave them without employment, and the idea was suggested by plaintiff that the miners form a company, buy the mining machinery and appliances, take a lease of the mine, and operate it by paying a royalty on the coal as mined. In this way and for this purpose the defendant Moniteau Coal Company had its origin.

In this situation and with a view to making a deal with the group of miners to take over and operate this mine, the plaintiff conferred with those in active charge of the Higbee Company, R. W. Mellow and brother, who owned the unpaid notes secured by this mining property, to ascertain on what terms he could deal with this group of miners. After a conference the defendant Higbee Company wrote plaintiff at Higbee, Missouri, this letter from St. Louis, of date August 3, 1925, viz:

"My brother and I have been studying about the proposition you wanted us to make you regarding the mine.

"We will be satisfied to sell this property as it is today for $15,000 cash. This could be handled in this way. For $15,000 cash we would give you all the notes that are left, then the mine would be free from lien and you would be able to sell it. The first four notes, three of which have already been paid and the fourth which is to be paid August 15th, are not included in this because you have had a favorable contract for these four months and you have had the use of the property during these four months from which you should have made considerable money.

"Of course, in order to sell this property, the buyer would expect to have it free from lien and this you would have by paying us cash.

"Please let us know what you expect to do.

"(Signed) Higbee Coal Mining Co.
"R. W. Mellow, Vice-President."

Where the Higbee Company said it would sell the property for $15,000 cash, it merely meant that it would take that amount in full satisfaction of its deed of trust thereon. The letter so shows and that is all it could do. It must be remembered that at that time plaintiff owed the Higbee Company thirteen notes of $1400 each, payable one each month, and one note of $1100, making a total of $19,300, but rather than take chances on foreclosure that company proposed to take $15,000 cash and cancel all such indebtedness.

In order to aid the plaintiff in his further negotiations with this group of miners, the Higbee Company, of date September 14, 1925, wrote this agreement addressed to plaintiff:

"In consideration of the sum of $1.00 to us in hand paid by you, we agree to cancel the deed of trust and unpaid notes we now hold on

Mine No. 11 at Higbee, Missouri, when the sum of $15,000 in cash has been deposited to the credit of the Higbee Coal Mining Co., at The Citizens Bank of Higbee, Missouri.

"(Signed) HIGBEE COAL MINING CO.

"GEO. E. MELLOW, Sec'y."

The negotiations with the group of miners proceeded along the line that plaintiff would sell to them, or a company to be formed by them, the mining equipment, including horses, mules, tram cars, office and storage building, tools, supplies, etc., and give them, or such company, a lease on the coal land on a royalty basis. The plaintiff first tried to get more than the $15,000 due to defendant for this property, but finally came down to $12,000, leaving a balance of $3,000 to be raised by plaintiff in some other manner. It also developed that plaintiff had had some labor troubles and differences with a smaller group of these miners and they refused to deal with the plaintiff or cooperate with the others in doing so. They were willing to deal with the Higbee Company or the Mellows, who controlled the same. This group of miners sent a representative, Mr. Marshall, to St. Louis to ascertain what could be done through the Mellows along this line. In order to obviate this difficulty with the miners and have the deal with the mining group proceed and be consummated through the Higbee Company, or the Mellows, instead of with plaintiff, plaintiff signed this statement or agreement, dated October 1, 1925, and addressed to the Higbee Company at St. Louis:

"For and in consideration of the sum of $1.00 to me in hand paid by the Higbee Coal Mining Company, and other valuable cons'deration: I hereby return to the Higbee Coal Mining Co., the property known as Higbee Mine No. 11, its equipment, buildings, shaft, tipple. machinery, tools, etc., together with all mining rights to 325 acres of coal, more or less; and surface rights on 71 acres more or less. I also agree hereby to maintain the said Mine No. 11, keeping the water pumped out, and feed the stock now at the mine, *until negotiations are completed. which are now under way.*

"(Signed) JOHN ITALIANI."

There can be no doubt that the "negotiations" referred to were those relating to the sale of the mining appliances and personal property and the leasing of the mining land to this group of miners. The evident meaning and purpose of this writing was to put the mining property in the hands of the Higbee Company in order to facilitate and keep from failing the negotiations then going on to sell the personal property of this mine and lease the land to this group of miners. It was, of course, understood that the Higbee Company was to receive on plaintiff's indebtedness to it whatever was paid by the group of miners for this personal property and mining lease up to

$15,000. That the Higbee Company was acting. in this matter for plaintiff's benefit is shown by the stipulation that plaintiff was "to maintain the said Mine No. 11, keeping the water pumped out, and feed the stock now at the mine, until negotiations are completed, which are now under way."

The plaintiff and the Higbee Company at this same time, October 1, 1925, exchanged with each other signed memoranda as follows:

To "Higbee Coal Mining Co.,

"St. Louis, Mo.

"Gentlemen:

"Having turned over the entire property, equipment, etc. of the Higbee Mine No. 11 to you, I hereby agree, in consideration of the sum of $1.00 to me in hand paid by you, on completion of the sale of the said Mine No. 11, when the $12,000 cash has been paid to you, to pay $3,000 cash to you for the deed to the seventy-one acres more or less, of surface ground, and for the lease to the mining rights on three hundred and twenty-five acres, more or less.

"JOHN ITALIANI."

To "Mr. John Italiana,

"Higbee, Mo.

"Dear Sir:

"On completion of negotiations now in progress for our sale of Mine No. 11, which we now hold, thru our agreement, and when we receive the $12,000 cash from the second part, we hereby agree, on receipt of $3,000 cash from you, to deed to you the seventy-one acres, more or less, of surface ground, and also to turn over to you the lease to the mining rights, made between us and the miners, together with all royalties included therein.

"HIGBEE COAL MINING CO.

"GEORGE E. MELLOW, Sec'y."

Up to this time no actual agreement had been reached with the group of coal miners, but the general terms of such an agreement had been outlined and the further details were being worked out by mutual concession. No deed or formal conveyance of the mining property had yet been made by plaintiff to the Higbee Company, though the plaintiff and the Higbee Company were representing to the group of miners that the Higbee Company was making the deal as owner.

On October 17, 1925, a meeting was held at Moberly, Missouri, for the purpose of arriving at a full agreement with this group of miners, later incorporated as the Moniteau Coal Company. At that meeting the two Mellow brothers represented the Higbee Company. Plaintiff was not actually present at the meeting but was represented by his attorney, Redick O'Bryan, who was in close communication. with

him at all times. The group of miners would pay only $11,000 in cash and the Higbee Company agreed to and did accept this as and for the $12,000 cash to be paid by plaintiff to that company. A form of lease was agreed to on a royalty basis to be executed by the Higbee Company as owner, and on October 18th the group of miners took possession of the mine and mining property. It took some little time for the miners to incorporate and the formal lease to and contract with the Moniteau Coal Company was finally executed and delivered on November 12th. The plaintiff had prepared the deed conveying the mining property to the Higbee Company before this meeting on October 17th, had had it acknowledged, and delivered it to his attorney just prior to this final meeting on October 17th to arrange the deal with the group of miners, with instructions to deliver and record the deed in case a satisfactory agreement was reached and the deal put through. Plaintiff also dictated the form of the mining lease to be executed by the Higbee Company to the group of miners when incorporated, and this, with some modifications, was accepted by the group of miners. The mining property was owned by plaintiff and he, rather than the Higbee Company, was making the sale and lease to this group of miners. As to why plaintiff was conveying this property to the Higbee Company and making the deal with the group of miners in the name of the Higbee Company, George Mellow, who was acting for that company, testified:

"The miners who afterwards formed the Moniteau Coal Company would not deal with Italiani direct and told us so; and Mr. Marshall came to St. Louis and told us the same thing; and therefore we had to get the property back before we could sell to the miners; and it was thought a deal could be made with the miners provided we owned the property; but until the property was deeded back to us, of course we could not sell it; and Mr. Italiani agreed to turn it back to us; and his consideration for the agreement was the chance to buy for $3,000 cash the lease to the mining rights and the fee to seventy-one acres surface property."

No question is involved here growing out of the deception used by both plaintiff and the Higbee Company in inducing the group of miners to believe that they were dealing with the Higbee Company only and not with plaintiff as the real owner and party at interest. Both parties to the present contest concede the validity of the contract and lease the Moniteau Coal Company and no issue is made as to the rights of that company.

No difficulty was had in carrying out the agreement reached on October 17th between plaintiff and the Higbee Company, acting jointly as one party, and this group of miners. Such miners at once took possession and began operating the mine, incorporated them-

selves as the Moniteau Coal Company, and received the property and lease agreed upon. The $11,000 was paid to the Higbee Company, which gave credit on plaintiff's indebtedness to it for $12,000, as was agreed by it, leaving $3,000 due.

The following letter written by the Higbee Company on October 27, 1925, to plaintiff's attorney, Redick O'Bryan, shows the situation on that date, to-wit:

"Mr. Hunter of Moberly (attorney for the group of miners) called me last Saturday and informed me that the miners had secured their charter and that everything was going along in good shape. Also that they were going to make up the lease according to the memorandum that we all signed in his office and that it would be forwarded to us for signatures.

"The miners are anxious to have the 25 acres, which they are to lease, staked off at Higbee. Please go down to Higbee as soon as possible and do this as this is *in accordance with John Italiani's instructions.* I think it would be well if you get in touch with John (plaintiff) regarding his fire insurance policies. He said he was willing to have the miners take over his policies, paying their proportion of the premium. The policies that we held were the Svea policy for $3,350 and the National Fire Insurance policy for $3,350, have been recalled and therefore the policies are cancelled.

"Please take care of the 25 acres lease as soon as possible.
"(Signed) Higbee Coal Mining Co.
"R. W. Mellow, Vice President."

The reason for the Higbee Company cancelling its insurance on this property was doubtless that it no longer had any interest in same except the payment of the balance due it from plaintiff of $3,000. This letter was written after plaintiff's deed to the Higbee Company was delivered and recorded. Defendant's repeated declarations and its whole conduct are wholly inconsistent with its present claim that it became the absolute owner of this property under plaintiff's deed to it of October 16th and that plaintiff's only right was to purchase this property from it for $3,000 cash. The Higbee Company was merely holding title to this property as trustee for the use and benefit of plaintiff. The deed from plaintiff to the Higbee Company was not, as it says, "a friendly foreclosure of the deed of trust" held by that company. On the contrary, that deed of trust was merely paid off and discharged except as to $3,000 yet unpaid.

We need not discuss whether or not plaintiff was at that time entitled to have his secured notes credited by payment of all except $3,000 and have this property conveyed to him subject to defend-

ant's lien to that extent. Plaintiff did not so ·demand and does not now.

■ What we hold is that plaintiff in fact remained the owner of this property notwithstanding his conveyance of the same to the Higbee Company for the purpose of consummating the deal with the group of miners, and his and defendant's rights are not different than they would be had no conveyance been made by him to the Higbee Company and the lease been made by him to the Moniteau Coal Company in his own name and the proceeds paid over to the Higbee Company in partial discharge of plaintiff's secured indebtedness. to it.

By the middle of November, 1925, nothing remained to be done except the payment to defendant of the balance of $3,000 due from plaintiff, the cancellation of all the notes secured by the deed of trust, the release of that deed of trust, and the reconveyance to plaintiff of this mining property subject to the lease to the Moniteau Coal Company. The defendant Higbee Company concedes that it had then received all the $25,000 originally owing to it and secured by the deed of trust on this mine except $3,000, and that if plaintiff had at that time paid or offered to pay it the balance of $3,000, it was obligated to and would have reconveyed the property to this plaintiff subject to such mining lease.

As we understand it, the defendant's contention is that this balance of $3,000 became due and payable on the completion of the deal with the Moniteau Coal Company· and that as plaintiff had a mere right to purchase the property at that price, he was bound to act and make payment at once, if at all, and having failed to do so, his right to purchase the property at that or any price ceased. Plaintiff's position is that there was no definite time fixed for the payment of this balance and that it was merely a balance due on the notes and deed of trust. This deed of trust has not been satisfied of record and the secured notes are yet held by the defendant Higbee Company.

Much is said in the briefs on either side as to the legal nature and effect of the deed in question made by plaintiff to the Higbee Company of date October 16, 1925—whether it is an absolute conveyance or in the nature of a mortgage to secure the balance due to defendant. That is not of importance, and, as between these parties, it can hardly be said to be either. As we have seen, the sole purpose of that deed was to clothe the Higbee Company with apparent and record ownership of the property in consummating the deal with the Moniteau Coal Company. When that was accomplished, it became, at least between the parties, *functus officio*. The balance due defendant was part of the amount secured by its deed of trust.

There was no merger of the estate created by the deed of trust in that created by the deed, absolute in form, to defendant. Such deed is expressly made subject to the deed of trust and not in extinguishment of it, thus negativing any intention to merge the two. Moreover, the two estates are not of the same character or quality as the estate created by the deed was purely fiduciary. [41 C. J. 783, sec. 883.] The owner of notes secured by deed of trust has no such title as merges in the estate created by a deed to him absolute in form. [Hospes v. Almstedt, 13 Mo. App. 270, 274; Bassett v. O'Brien, 149 Mo. 381, 390, 51 S. W. 107.]

From what we have said it follows that plaintiff, as the real owner of the mining land, is entitled to the royalty paid by the lessee. The Higbee Company could collect it only for the purpose of applying same on the indebtedness due it. It is claimed by plaintiff that the Higbee Company, in its signed memorandum of October 1st, expressly agreed to deed this property back to plaintiff and turn over to him the lease made with the miners, together with all royalty collected, but, whether so or not, such would follow as an incident of plaintiff's ownership of the land.

There appears to have been no attempt by either party to promptly settle this balance due to defendant. There is really only one point of conflict in the evidence. The plaintiff says that after the lease deal was completed he spoke to the Mellows about paying the balance of $3,000 and asked some indulgence as he had just purchased another mine near Columbia and needed his money, and that they assured him that they were willing to hold the lease and collect the royalty till such balance, with the interest thereon, was paid in that way, unless plaintiff wanted to settle sooner. The Mellows deny this and say that nothing was said on this subject. In this matter plaintiff is corroborated by Attorney O'Bryan, who said plaintiff was to pay this balance either in cash or they were to take it out of the royalties. In any event, it is clear that there was an understanding between these parties to let this matter of reconveying the property to plaintiff and turning over to him the lease to the Moniteau Coal Company rest for a time on account of not wanting the group of miners to know that plaintiff was the real owner of the land and the real maker and owner of the lease to them. The evidence shows this in a number of ways, and plaintiff claims that on November 16, 1925, he wrote defendant a letter offering to pay this $3,000 balance and requesting a reconveyance to him by defendant of this mining land subject to the lease. It is clear that plaintiff wrote defendant on this subject for in defendant's reply dated November 19, 1925, it said:

"This will acknowledge receipt of your letter of November 16th.

. . . As to the transferring of the lease of property at Higbee, I think it is well to hold up for a while until the miners have mined coal for a month or two and they have received some money from sales agent, DeVoy & Kuhn. After they have received two or three pays, things will be running much smoother and that will be a proper time to get together about transferring the lease.

"(Signed) R. W. MELLOW."

This certainly induced plaintiff to believe that in due time defendant would render an account of the royalties received, and which it continued to collect, and reconvey to him this mining land. Plaintiff went to the State of California and the matter rested without action of either party or communication between them till some months before this action was commenced, when plaintiff demanded an accounting and reconveyance. The defendant merely ignored such demand.

It was admitted at the trial that defendant had received royalties from this mining land amounting to $4,793.88. It is, of course, entitled to interest on this balance of $3,000 due it. The court made no accounting as it refused plaintiff any relief. This was error, for which the judgment must be reversed.

We have not mentioned, though not overlooked, that the defendant Higbee Coal Mining Company is a corporation, has had its charter to do business as a corporation forfeited by reason of failure to file reports with the Secretary of State and pay its corporation licenses as required by law, and that its business and property has passed into the hands of the individual defendants, who are its officers and board of directors, as trustees, and who are now in charge of same. The case properly proceeded against them as representing the corporation.

The case is, therefore, reversed and remanded to be proceeded with in accordance with this opinion. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.